IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VICENTE SANCIVERI CERVANTES,    :

    Petitioner,    :
                                             CIVIL ACTION 14-00090-WS-M
v.    :
                                        CRIMINAL ACTION 10-00225-WS-M
UNITED STATES OF AMERICA,    :

    Respondent.    :

REPORT AND RECOMMENDATION

Pending before the Court is Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 87). This action was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing Section 2255 Cases. It is now ready for consideration. The record is adequate to dispose of this matter; no evidentiary hearing is required. It is recommended that Petitioner's Motion to Vacate (Doc. 87) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Vicente Sanciveri Cervantes. It is further recommended that any certificate of appealability filed by Petitioner be denied as he is not entitled to appeal *in forma pauperis*.

1

Cervantes was indicted on September 30, 2010 for conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (count one) and twenty-two counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (Doc. 1). On August 31, 2012, Cervantes pled guilty to all twenty-three of the charges brought against him (*see* Doc. 47; *see also* Doc. 92, p. 2). On December 13, 2012, United States District Judge Steele sentenced Petitioner to 110 months on each of the twenty-three counts, to be served concurrently, as well as three years of supervised release following his release from prison on each count, to be served concurrently, and an assessment of two thousand, three hundred dollars (*see* Doc. 63).

Cervantes appealed his conviction (Doc. 67), but it was affirmed, on June 14, 2013, by the Eleventh Circuit Court of Appeals in a written opinion (Doc. 84). That judgment was entered as mandate on July 22, 2013 (*see* Doc. 85). Petitioner sought *certiorari* in the United States Supreme Court, but his petition was denied (*see* Doc. 86).

Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on February 14, 2014 in which he raises the single claim that his attorney rendered ineffective assistance (Doc. 87). Respondent filed a response on May 27, 2014 (Doc. 92).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court defined the showing a habeas petitioner must make to prevail on an ineffective assistance claim:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the sixth amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Id*. at 687.

Petitioner has asserted that his attorney rendered ineffective assistance in that she requested a particular offense level for sentencing and withdrew certain previous objections to calculations made in the Presentence Investigation Report at the sentencing hearing that resulted in a longer sentence than he deserved (Doc. 87). The evidence of record follows.

The Presentence Investigation Report (hereinafter *PIR*), prepared by the United States Probation Office, found that the base offense level for the charges against Petitioner was twenty-six; this figure was based on a finding that the amount of laundered funds under consideration was seven million dollars (Doc. 52, p. 12). The PIR further made the following recommendations for increasing the base figure: six levels because some of the laundered money was from the proceeds of drug sales; two levels because the laundered money was being laundered for the purpose of carrying on further unlawful activity; two levels because of the sophistication of the laundering; and by four levels because Cervantes was a leader of the criminal activity (Doc. 52, pp. 12-13). However, the PIR recommended downward adjustments of two levels because Petitioner accepted responsibility for his crimes and one level because of his timely notice of the intent to plead guilty (Doc. 52, p. 13). This resulted in a recommended adjusted offense level of thirty-seven and a guideline sentence range of 210-to-262 months for each charge, based on Petitioner's having no criminal history (Doc. 52, p. 16).

Cervantes' Attorney, Brandy B. Hambright, filed a Position Statement with the Court in which she objected to the seven million dollar amount that the PIR indicated had been laundered

(Doc. 55, p. 1). Hambright further argued that the base offense level should have been twenty-two, based at least in part, on a lower laundered money total (Doc. 55, p. 2). The Attorney further objected to the six-level enhancement for drug proceeds, the two-level enhancement for the sophistication of the laundering, and the four-level enhancement for Cervantes' role as a leader, arguing that the Government could provide no evidence of these findings (Doc. 55, pp. 2-3).

The Probation Office filed an Addendum to the PIR, answering Petitioner's objections and suggesting what evidence was available to rebut them (Doc. 57).

Hambright then filed a Sentencing Memorandum in which she more fully made her arguments regarding Cervantes' sentencing (Doc. 60). The Attorney conceded that the two levels added for the sophistication of the laundering was not inappropriate (Doc. 60, p. 5). Hambright argued that the value of the laundered funds was substantially lower than the seven million dollar amount asserted in the PIR, that he was not a leader of the criminal enterprise, and that he had no knowledge that the money laundered was drug proceeds (Doc. 60, pp. 5-7). The Attorney also argued that Cervantes was unlikely to commit this crime again, as this was aberrant behavior, pointed to other similar cases wherein Defendants had been sentenced for shorter periods

5

of time, and asked for the Court to consider the deplorable conditions under which Petitioner had been confined in a Columbian prison before being extradited here to face the charges against him (Doc. 60, pp. 7-14). Hambright's argument, ultimately, was that Petitioner's adjusted offense level should have totaled twenty-three, as opposed to the PIR's recommendation of thirty-seven, resulting in a sentencing range of forty-six to fifty-seven months (Doc. 60, p. 5). On the day before sentencing, Hambright filed a Motion for Safety Valve Consideration in which she argued for a two-level reduction in the offense level for meeting five criteria under the Guidelines (Doc. 62).

At the Sentencing Hearing, the following discussion among Judge Steele, Attorney Hambright, and United States Prosecutor Bedwell took place:

> **THE COURT:** All right. There were a number of objections raised to the Presentence Report, and I understand that the attorneys have had an opportunity with the aid of the interpreter to discuss those objections, and there's been a resolution of the objections.
> Who wants to state – Ms. Bedwell, you want to state the resolution?
> **MS. BEDWELL:** Yes, sir, Your Honor. The Government has agreed that it is appropriate to hold the Defendant accountable for the amount of money that was actually laundered in connection with the

scheme as opposed to amounts that were discussed during the undercover negotiations.  That would result in a reduction of four levels in the base offense level.

In addition, the Government has agreed that the Defendant should be held accountable for a three-level enhancement for his leadership role in the offense as opposed to the four-level enhancement that appears in the Presentence Investigation Report.

The total adjustment to the offense level would be a five-level difference, and our understanding is the new guideline level is 121 to 151 months.

**THE COURT:**  All right. Ms. Hambright, is that you and your client's understanding of the agreement?

**MS. HAMBRIGHT:**  Yes, sir, it is.

**THE COURT:**  All right.  Then the objection with regard to drug proceeds, the sophistication of the scheme – and I think there was some request to apply guideline Section 2X1 as an alternative argument.  I assume that those are withdrawn at this time, the objections are withdrawn?

**MS. HAMBRIGHT:**  Yes, Your Honor, they are.

**THE COURT:**  All right.  Are there any other matters with regard to the content of the Presentence Report that we need to discuss at this time, Ms. Hambright?

**MS. HAMBRIGHT:**  No, Judge, unless you wanted to address the motion for safety valve consideration in light of that.

**THE COURT:**  Yeah, let's do that.  That's an appropriate motion to discuss because it would affect the Guidelines.  And I note that you filed a motion for application of the safety valve yesterday.  Do you want to be heard on that?

**MS. HAMBRIGHT:**  No, Your Honor.  My motion speaks for itself.  I've set forth the pertinent, you know, criteria for

application of safety valve, and I would just ask that you consider those in light of the facts of this case.

**THE COURT:** All right. Ms. Bedwell, you want to respond to it in any way?

**MS. BEDWELL:** Your Honor, I think the law is clear that safety valve does not apply in cases such as this. And there was the additional matter of information that has not been provided in connection with that effort.

**THE COURT:** Yeah, I think the problem with the application of a safety valve is that the predicate offenses of conviction are all outlined in the statute, none of which include a Section 1956 conviction, which is the conviction of – or the statue of conviction in this case. So accordingly, the safety valve application is not appropriate for Mr. Cervantes, and the motion is denied.

Anything else with regard to the Presentence Report then, Ms. Hambright?

**MS. HAMBRIGHT:** No, Your Honor.

**THE COURT:** Ms. Bedwell?

**MS. BEDWELL:** No, sir.

**THE COURT:** All right. Then with those adjustments, the Court will adopt the Presentence Report, noting that the base offense level is 22. There's a six-level enhancement for drug proceeds. There's a two-level enhancement for application of Section 1956. There's a two-level enhancement for sophistication of the scheme. There's a three-level enhancement for role in the offense.

Mr. Cervantes is entitled to a three-level reduction for acceptance of responsibility, producing an adjusted offense level of 32. He has no criminal history points, placing him in Criminal History Category I, generating a sentencing guideline range of 121 to 151 months.

All right.  Ms. Hambright, you want to be heard on Mr. Cervantes' behalf with regard to sentencing?

**MS. HAMBRIGHT:**  Yes sir, if I may, please.  Judge, I understand that you have reviewed the sentencing memorandum that I filed.  I would like to just highlight a few points, and I think that my client would like to speak to Your Honor.

First, I just wanted to point out the – several compelling letters that were written on behalf of Mr. Sanciveri Cervantes, particularly that of his daughter, a very heartfelt and compelling and emotional letter written by his daughter, his oldest daughter at 21 years of age, explaining their relationship and how he is very missed by the family.

And I argued or set forth, Judge, several arguments regarding the 3553 factors, particularly recidivism.  Mr. Cervantes has zero criminal history.  And at 46 years of age, Your Honor is well familiar with the criminal history computation measuring the recidivism article or study.  And Mr. Cervantes, other than his gender and current employment status, is in the lowest rates of recidivism.  And I would say, Your Honor, that I feel that that would be a good bet in this case that Mr. Cervantes will no longer offend the laws of this country or any other country.

And secondly, I argued aberrant behavior in that, again, Mr. Cervantes was in his mid 40's when he became involved in this conduct, made a terrible mistake and a very bad judgment call in becoming involved in these matters but appears before Your Honor having pled guilty to those matters and hoping – to those mistakes and hoping that you will allow him to very soon return to a law-abiding life in his country.

Thirdly, and I think the other two things, Judge, are striking in that I've set forth in a table the – what would be

9

sentencing disparities in this matter based on the sentences imposed against likely-situated or similarly-situated individuals. And the cases are across the United States, from California to here in this particular court, and the sentencing range imposed in those cases—in these type cases is from 12 months to 90 months.

And I would particularly point Your Honor to the Luis Coronel Vega case, which Your Honor was the sentencing judge in, which is directly related to Mr. Cervantes' case in that Mr. Vega performed one of the hand-to-hand deliveries of money in this conspiracy and received a total of 57 months. It is worth noting that Mr. Vega performed those acts on U.S. soil.

Finally, I won't go into it in depth, but the – I learned about the conditions of Colombian prison life in doing this research for this brief or argument, and I hope Your Honor will consider the deplorable conditions in which all of these individuals have to live, and particularly that Mr. Cervantes was involved in an investigation of the La Picota prison, which I'm told resulted in some persons being terminated from their positions. So, apparently those conditions are quite deplorable, and I think several courts have taken that into consideration as I've set forth in the table of comparable – of lesser sentences.

So, I would just ask Your Honor to hear from my client and to take into consideration those matters that I've set forth in my sentencing memorandum.

\*\*\*

**THE COURT:** All right. Ms. Hambright, anything further?

**MS. HAMBRIGHT:** Judge, just briefly, I do believed that this is a case, in light of the fact that Mr. Cervantes is not – has never been to the United States prior to

> being brought here by this Government, he
> will never be back here.  Ant it is a case
> in which I believe Your Honor should
> consider the 3553 factors set out and
> consider a downward variance from the
> advisory guideline range so that Mr.
> Cervantes can return to his country and, you
> know, live there and not return to the
> United States and not be a ward of the
> United States for a long, significant period
> of time.
>           That's all, Judge.  Thank you.

(Doc. 77, pp. 4-9, 15-16).

After hearing from Attorney Hambright, Cervantes, and Prosecutor Bedwell, Judge Steele imposed a sentence of 110 months on each of the twenty-three counts, to be served concurrently (Doc. 77, pp. 20-21).  In doing so, Judge Steele considered the PIR, Hambright's sentencing memorandum, the arguments presented at the hearing, and the Sentencing Guidelines (Doc. 77, p. 16-19).  The Judge found that Petitioner's behavior was not aberrant as the money laundering was a series of events taking place over a period of time; he further noted that this was "perhaps one of the largest money laundering conspiracies" that he had ever encountered in this Court, evidence of its sophistication (Doc. 77, pp. 16-17, 18).  Judge Steele, however, also took into account the ten months that Cervantes had spent in a Colombian prison, waiting to be extradited, and made an adjustment for that (Doc. 77, pp. 19).

In discussing the various things considered in entering Petitioner's sentence, he noted that it is "the sentence that [he] would impose regardless of any rulings on the objections to the Presentence Report or objections to the Guidelines that have been posed in this case" (Doc. 77, p. 20). This concludes the Court's summary of the evidence of record.

Cervantes has argued that his Attorney was deficient in her representation in that she withdrew her previous objections to some of the calculations made in the PIR after reaching an agreement with the United States Attorney (Doc. 87, p. 8). The Court notes, however, that the Agreement resulted in an adjusted offense level that was five levels lower than previously suggested by the Probation Office; this lowered the sentencing range from 210-to-262 months to 121-to-151 months. The Court considers this to be a fairly substantial decrease in the possible amount of time served.

Hambright's arguments did not stop, however, with the Agreement. As shown above, the Attorney continued to assert that Petitioner's sentence should be shortened because he had no criminal history, that this was not typical behavior for Cervantes, that sentences of others for this charge were all over the map, and that he had already undergone a very difficult term in the Colombian prison. Though Judge Steele did not agree

12

with all of these arguments, he considered them and acknowledged a sentence adjustment for his South American prison tour. The Court finds no deficiency in Attorney Hambright's representation.

Furthermore, the Court notes that Cervantes has demonstrated no prejudice. While he did not receive the short sentence that his Attorney had argued for, Petitioner benefitted from her efforts in a sentence appreciably lower than first suggested in the PIR. The lack of prejudice is all the more evident in Judge Steele's remark that the sentence imposed was the one that he was going to enter regardless of the objections to either the PIR or the Guidelines, a sentence eleven months shorter than the minimum suggested Guideline recommendation.

In summary, Cervantes has raised a single claim in this petition. That claim is without merit. Therefore, it is recommended that the petition be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Vicente Sanciveri Cervantes.

Furthermore, pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the undersigned recommends that a certificate of appealability (hereinafter *COA*) in this case be denied. 28 U.S.C. foll. § 2255, Rule 11(a) ("The district court must issue

or deny a certificate of appealability when it enters a final order adverse to the applicant"). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a COA. 28 U.S.C. § 2253(c)(1). A COA may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When the merits of a claim are reached, a COA should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Inasmuch as the Court has found that Cervantes has failed to assert sufficient facts to support a claim of constitutional error, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. It is suggested that Cervantes will not be able to make that showing.

## CONCLUSION

It is recommended that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, be denied. It is further recommended that any certificate of

appealability filed by Petitioner be denied as he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(B); S.D. ALA. L.R.72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 2nd day of July, 2014.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE